# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

ESTATE OF MOE NORMAN,  )
TODD GRAVES, and  )
TODD GRAVES GOLF  )
SCHOOL LLC,  )
  )
         Plaintiffs,  )
  )
vs.  )    Case No. CIV-14-01435-M
  )
GREG LAVERN, and  )
FRIESEN PRESS, INC.,  )
  )
         Defendants.  )

## ORDER

Before the Court is plaintiffs the Estate of Moe Norman, Todd Graves, and Todd Graves Golf School LLC's (collectively, "plaintiffs") Motion for Temporary Restraining Order and Preliminary Injunction, filed April 10, 2010. On May 06, 2015, defendant Greg Lavern (hereinafter, "defendant") filed his response.[1] On May 11, 2015, the Court held an evidentiary hearing on plaintiffs' motion.[2] On May 15, 2015, plaintiffs' filed a supplemental brief.[3] Based upon the parties' submissions and the evidentiary hearing, the Court makes its determination.

---

[1] Plaintiffs have also sued Friesen Press, Inc.; however, Friesen Press is not the subject of this motion as it appears the parties have settled their disputes.

[2] Defendant has submitted an email to the Court's orders inbox. It is not clear whether defendant first mailed this document to the Court as required and is submitting the same document to the Court to address the timing issue addressed in the Court's phone conference with the parties on May 05, 2015. Notwithstanding, the Court declines to consider defendant's email as defendant has not requested, nor has he been granted, leave to file additional briefs/documents in this matter.

[3] At the May 05, 2015, hearing, the Court directed plaintiffs to file a supplemental brief within a couple of days with Oklahoma authority recognizing a commercial disparagement claim.

I.    Introduction

Moe Norman was a renowned golf player known for his golf swing who is now deceased. Moe Norman, through his will, granted his estate the title and interest in and to Moe Norman's name and right of publicity. The Estate of Moe Norman also owns the trademark rights to the MOE NOREMAN® mark for uses in connection with golf instructions, DVDs, and other golf related goods/services. Subsequently, the Estate of Moe Norman licensed this right to Todd Graves and his school, the Todd Graves Golf School LLC, located in Oklahoma, where he teaches Moe Norman's golf swing. Allegedly, Todd Graves is a former student of Moe Norman who also previously served as a co-instructor with Moe Norman. The Estate of Moe Norman, Todd Graves, and the Todd Graves Golf School LLC sued defendant Greg Lavern, who is proceeding *pro se* and is also an alleged former student of Moe Norman for over thirty years. Defendant Lavern is the author of a book titled "FINISH TO THE SKY THE GOLF SWING MOE NORMAN TAUGHT ME: GOLF KNOWLEDGE WAS HIS GIFT TO ME".

Plaintiffs filed this suit alleging the following nine causes of action: trademark infringement, false designation of origin, false advertising, defamation, commercial disparagement, common law unfair competition, violation of the right of publicity, Oklahoma Consumer Protection Act violation, and Oklahoma Uniform Deceptive Trade Practices Act violation. Plaintiffs now move the Court to issue a preliminary injunction enjoining defendant

---

Plaintiffs' brief was filed four days after the hearing and contains additional arguments/assertions by plaintiffs that are outside the scope of the Court's request. In this case, the Court has been adamant that defendant follows the Court's instructions; the Court requires the same from plaintiffs. Accordingly, the Court will not consider any assertions/arguments in plaintiffs' brief outside the scope of the Court's request. The Court also finds that, at this time, it need not address the issue of whether Oklahoma recognizes commercial disparagements claims because, due to the overlapping nature of plaintiffs' claims, the Court is able to rule on this motion without reaching this issue.

from using the MOE NORMAN® trademark and from further disparaging the Estate of Moe Norman, Todd Graves, and/or Todd Graves Golf School LLC.

II. Discussion

A movant seeking a TRO or preliminary injunction must show: (1) a substantial likelihood of success on the merits; (2) irreparable injury to the movant if the injunction is denied; (3) the threatened injury to the movant outweighs the injury to the party opposing the preliminary injunction; and (4) the injunction would not be adverse to the public interest. *Dominion Video Satellite, Inc. v. EchoStar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001). "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Id.* (internal citation omitted). Whether to grant a preliminary injunction rests within the sound discretion of the trial court. *United States v. Power Eng'g Co.*, 191 F.3d 1224, 1230 (10th Cir. 1999).

If, however, a movant is seeking a disfavored preliminary injunction—preliminary injunctions that alter the status quo, mandatory preliminary injunctions, or preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits—the movant must satisfy a heightened burden. *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004). "[A]ny preliminary injunction fitting within one of the disfavored categories must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* at 975. Specifically, "a party seeking such an injunction must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms". *Id.* at 976.

In the case at bar, the Court finds that plaintiffs must satisfy a heightened burden because they are seeking a disfavored preliminary injunction. Specifically, the Court finds that at the very least plaintiffs are requesting an injunction that alters the status quo in that they seek to enjoin defendant from his alleged current improper use that impedes on plaintiffs' right in the Moe Norman mark and Moe Norman's right of publicity.

A. Substantial likelihood of success on the merits?[4]

Plaintiffs assert that they have a substantial likelihood of success on the merits on their (a) Lanham Act and parallel state law claims under the Oklahoma Deceptive Trade Practices Act ("ODTPA"), (b) right of publicity and Oklahoma Consumer Protection Act, Okla. Stat. tit. 15, § 753(29) claims, and (c) commercial disparagement claim.

1. Lanham Act and parallel state law claims

A Court may grant an injunction under the Lanham Act "according to the principles of equity and upon such terms as the court may deem reasonable[.]" 15 U.S.C. § 1116(a). Plaintiffs assert a federal trademark infringement claim under Section 32 of the Lanham Act, 15 U.S.C. § 1114, a false designation of origin claim under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), a false advertising claim under Section 43(a) of the Lanham Act, 15 U.S.C. §

---

[4] The Court notes that defendant has set forth several grounds, as set forth below, for why plaintiffs' claims are baseless. However, defendant provides not even a single citation or authority to support any of his arguments. Instead, defendant simply argues based on his belief as to what the law should be and what his rights are. While the is required to construe a *pro se* litigant's filings/arguments liberally, the Court is precluded from supplying additional factual allegations or constructing a legal theory on behalf of a *pro se* litigant. *See Whitney v. New Mexico*, 113 F.3d 1170, 1175 (10th Cir. 1997) (citation omitted); *see also United States v. Pinson*, 584 F.3d 972, 975 (10th Cir. 2009) (noting, while *pro se* litigants' arguments are construed liberally, "this rule of liberal construction stops, however, at the point which [the court] begin[s] to serve as his advocate.").

1125(a)(1)(b), and a common law unfair competition[5] claim. The Tenth Circuit Court of Appeals has held that because "[t]rademark infringement is a type of unfair competition; the two claims have virtually identical elements and are properly addressed together under . . . section 43 of the Lanham Act." *Utah Lighthouse Ministry v. Found. for Apologetic Info. & Research*, 527 F.3d 1045, 1050 (10th Cir. 2008) (citations omitted); *see also Brunswick Corp. v. Spinit Reel Co.*, 832 F.2d 513, 527 (10th Cir. 1987) (noting that "passing off" under ODTPA is similar to section 43 of the Lanham Act claim to be determined by the "likelihood of confusion standard"). Thus, to prevail on their claims, plaintiffs must show that (1) the mark is protectable, (2) defendant used the trademark in connection with any goods or services, and (3) defendant's use "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." *Utah Lighthouse Ministry*, 527 F.3d at 1050 (internal quotation marks and citation omitted).

Where a mark is federally registered, it is presumed to be protected. 15 U.S.C. § 1115(a). Further, plaintiffs bear the burden of proving likelihood of confusion. *See Utah Lighthouse Ministry*, 527 F.3d at 1055.

> Likelihood of confusion is typically evaluated according to a six-factor test in which the court considers: (1) the degree of similarity between the marks; (2) the intent of the alleged infringer in using the mark; (3) evidence of actual confusion; (4) similarity of products and manner of marketing; (5) the degree of care likely to be exercised by purchasers; and (6) the strength or weakness of the marks. No one factor is dispositive.

*Id.* (internal citation omitted).

---

[5] Because plaintiffs base their common law unfair competition claim on the same facts they base their Lanham Act claims on, the Court addresses them together with plaintiffs' Lanham Act claims.

Plaintiffs assert that defendant is engaged in conduct intended, or at least has the inevitable effect, of creating a likelihood of confusion as to affiliation between defendant and the Moe Norman mark. Specifically, plaintiffs cite defendant's prominent and serial invocation of the "Moe Norman" name and his likeness as the key feature of all his promotional activities as evidence. Plaintiffs also contend that defendant's express claims that he is the "exclusive" keeper of Moe Norman's secrets, is Moe Norman's sole protégé, and is an heir to Moe Norman's golf knowledge are evidence of his intentions to create a likelihood of confusion that he is affiliated with plaintiffs who have the legal right to the Moe Norman trademark and his publicity rights.

Defendant, who is proceeding *pro se*, responds to all of plaintiffs' allegations in bulk. Construing his allegations liberally, defendant essentially contends, among other assertions, plaintiffs' motion should be denied because he holds the true knowledge of Moe Norman's original swing, which Moe Norman taught him for more than thirty years (as opposed to plaintiff Todd Graves who only knew Moe Norman towards the last ten years of Moe Norman's life and is teaching a much limited and different "single plane golf" swing that is different from Moe Norman's "original golf swing"); plaintiffs suffered no damages as it appears most of their instruction sessions sold out from their website; Moe Norman, while he was alive, visited defendant and gave him the exclusive rights to teach, promote, and write a book on his golf swing and their relationship; defendant's book is based on defendant's own personal and golf relationship with Moe Norman for over thirty years, which provides him with his own publicity to promote the book or his relationship with Moe Norman and is also protected under the First Amendment; the images he used in his book were used with permission from Lawson Mitchell who had copyrights on those pictures; plaintiffs have no valid trademark rights to the Moe Norman swing instruction because defendant learned the Moe Norman swing directly from Moe

6

Norman and it is now part of defendant's own intellectual property which he owns a copyright to, which overrides defendant's trademark on Moe Norman's swing. In addition, defendant contends that he is the one who has suffered damages as a result of plaintiffs' threatening and forcing his publisher to remove his current book offline and other acts which he alleges led to the removal of his previous book and plaintiffs subsequently usurping that book's title as their domain name.

In the case at bar, it is clear that the Moe Norman mark is a federally registered trademark and enjoys a presumption of protection. It is also clear that defendant used this mark in connection with his book "FINISH TO THE SKY THE GOLF SWING MOE NORMAN TAUGHT ME: GOLF KNOWLEDGE WAS HIS GIFT TO ME" and other golf related products or services through his postings online, particularly his postings on finishtothesky.com[6], Facebook, LinkedIn, and his blog at candianballstriker.wordpress.com. It is also clear that this use is likely to create, and has already created, confusion in the market place. The Moe Norman mark being used by both parties is completely identical; defendant uses this mark to promote his current and/or future golf related services through this mark; both parties utilize mainly the world wide web to promote golf related goods or services primarily based on Moe Norman's swing; these goods or services are provided to nonprofessional golfers interested in learning Moe Norman's swing or, at the very least, to golfers who are looking to learn/improve their golf swing; and evidence presented by the parties to the Court through their briefs and at the evidentiary hearing show that there is actual confusion among the consumers on the nature and extent of the parties' affiliation to Moe Norman and the authorization/authenticity/source of the

---

[6] It appears this site was maintained by defendant Friesn Press, Inc. and since has been taken down due to Friesn Press, Inc.'s settlement with plaintiffs.

services the parties provide. Under these facts, the Court finds plaintiffs have shown a substantial likelihood of success on the merits of these claims.

2. Right of Publicity and Oklahoma Consumer Protection Act, Okla. Stat. tit. 15, § 753(29) claims

Under Oklahoma law,

> In order to establish a *prima facie* case of statutory violation of the right of publicity, a plaintiff must plead facts establishing the three elements of the claim: (1) Defendants knowingly used [Plaintiff's] name or likeness, (2) on products, merchandise or goods, (3) without [Plaintiff's] prior consent. *Brill v. Walt Disney Co.*, 2010 OK CIV APP 132, ¶ 10, 246 P.3d 1099, 1103. Oklahoma has clearly joined the states that condition recovery for misappropriation of likeness or name on the allegation and proof of defendant's unconsented-to use of plaintiff's name for some commercial purpose to plaintiff's damage.

*Bates v. Cast*, 316 P.3d 246, 254 (Okla. Civ. App. 2014) (quotation marks and citations omitted). Further, 15 Okla. Stat. tit. 15, § 753(29) makes it unlawful for any person to "falsely state[] or impl[y] that any person, product or service is recommended or endorsed by a named third person[.]"

Plaintiffs assert that defendant using the Moe Norman name and likeness to his commercial advantage and implying an affiliation that does not exist violates their publicity rights and the Oklahoma Consumer Protection Act. In his bulk response to plaintiffs' motion, defendant vehemently protests against the merits of plaintiffs' claims. However, as noted above, other than his conclusory mention of the First Amendment of the United States Constitution or his Canadian copyrights, defendant has not provided any sound legal theory supported with any authority, case law or statutory, to support his arguments.

Accordingly, having carefully reviewed the parties' submissions, and having considered the evidence presented at the hearing, and for the reasons set forth above, the Court finds that

plaintiffs have shown a likelihood of success on the merits on their right of publicity and Oklahoma Consumer Protection Act, Okla. Stat. tit. 15, § 753(29) claims.

B.  Irreparable injury

To meet the "irreparable harm" requirement, plaintiffs must establish that an injury is both imminent and not theoretical. *See Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003) (citations omitted). Such an injury must be beyond "merely serious or substantial" and, generally, one for which an adequate monetary remedy is unavailable. *See id*. The Tenth Circuit has stated "[i]rreparable injury is frequently presumed where a trademark is wrongfully appropriated by another." *Lorillard Tobacco Co. v. Engida*, 213 F. App'x 654, 656-57 (10th Cir. 2007) (citing cases).

Plaintiffs assert that because of the nature of plaintiffs' claims which involve intellectual property rights, irreparable harm is presumed from the likelihood of success on the merits. In response, other than his conclusory assertions that plaintiffs have not suffered any loss, defendant does not meaningfully contest this prong and/or why the presumption of irreparable injury is improper in this case. Accordingly, under the facts of this case, the Court finds that, for the reasons set forth above, plaintiffs have already suffered, and will continue to suffer, imminent harm to the good will and reputation of their trademark and their right in Moe Norman's right of publicity if an injunction does not issue.

C.  Balance of harm

The Court must balance the proposed harm to plaintiffs with the proposed harm to defendant. Further, because the preliminary injunction requested is a disfavored one, plaintiffs must satisfy a heightened burden showing the balance of harm factor tips in their favor.

Plaintiffs assert that defendant suffers no harm from being enjoined from continuing to imply a non-existent affiliation with Moe Norman, and from falsely disparaging the integrity of plaintiffs who are the authorized owners of Moe Norman's property rights. Defendant, on the other hand, contends that he has suffered and will continue to suffer a great deal of harm due to plaintiffs forcing his publisher to stop publishing his book and shut down the website promoting his book.

Having carefully reviewed the parties' submissions, and having considered the evidence presented at the hearing, and for the reasons set forth above, the Court finds that the balance of harm favors plaintiffs as to any golf related reference to plaintiffs and/or use of the Moe Norman mark in relation to golf related goods or services or to imply any association with defendant and plaintiffs. However, despite plaintiffs' assertion, the Court finds that, taking into account the higher burden plaintiffs must satisfy on this prong due to the nature of the requested preliminary injunction, the balance tips in favor of defendant as to enjoining publication or sale of defendant's book "FINISH TO THE SKY THE GOLF SWING MOE NORMAN TAUGHT ME: GOLF KNOWLEDGE WAS HIS GIFT TO ME". The Court finds that such preliminary injunction would likely cause significant damages to defendant that would be difficult to ascertain/compensate in the form of money damages.

D. Public interest

Finally, a movant seeking a preliminary injunction must show that the injunction would not be adverse to the public interest. It is well established that the public has an interest in not being deceived as to the source of goods or services provided. However, the public also has significant interest in allowing the free flow of ideas and publication of a creative work resulting from personal experience. Accordingly, the Court finds that a preliminary injunction enjoining

defendant from making any golf related reference to plaintiffs and/or use of the Moe Norman mark in relation to golf related goods or services or to imply any association with defendant and plaintiffs is in the public's interest. The Court also finds that at this stage of the ligation it is in the public's interest not to issue an injunction regarding defendant's book "FINISH TO THE SKY THE GOLF SWING MOE NORMAN TAUGHT ME: GOLF KNOWLEDGE WAS HIS GIFT TO ME", which allegedly includes an account of his personal relationship as a student/friend of Moe Norman.

III. Conclusion

Accordingly, for the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction [docket no. 08] as follows:

(1) Defendant is enjoined from further mentioning[7] Moe Norman's Estate, Todd Graves, or Todd Graves Golf School LLC in relation to golf-related goods or services,

(2) Defendant is enjoined from using the Moe Norman® mark or speaking/implying any affiliation with the Moe Norman Estate, Todd Graves, or Todd Graves Golf Academy in association with any golf related goods or services, and

(3) the Court at this time will not enjoin the continued publication or sale of defendant's book "FINISH TO THE SKY THE GOLF SWING MOE NORMAN TAUGHT ME: GOLF KNOWLEDGE WAS HIS GIFT TO ME".

**IT IS SO ORDERED this 20th day of May, 2015.**

*/s/ Vicki Miles-LaGrange*
VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE

---

[7] The Court notes that during the evidentiary hearing on this motion, defendant stated that he has refrained from mentioning the Moe Norman Estate, Todd Graves, or the Todd Graves Golf School LLC and he conceded that he does not see any need to mention them in the future.